IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

Clinton Eugene Gilley, as Administrator
of the Estate of CARL DAVID GILLEY,
Nicole Leigh Le, as Administrator of the
Estate of CHRISTINE TARA WARDEN GILLEY,
and Clinton Eugene Gilley and Nicole
Leigh Le as Co-Administrators of the
Estates of J.G. and G.G., minor children,

    Plaintiffs,

v.                                            CIVIL ACTION NO. 1:18-00536

C.H. ROBINSON WORLDWIDE, INC.,
J&TS TRANSPORT EXPRESS, INC.,
BERTRAM COPELAND, M&K TRUCKLEASING, LLC,
and RIVER VALLEYCAPITAL INSURANCE, INC.,

    Robinson.

## **MEMORANDUM OPINION AND ORDER**

Pending before the court is defendant C.H. Robinson's motion to strike plaintiffs' Rule 26(a)(2) supplemental expert disclosures. (ECF No. 202.) Robinson contends that the revised expert report of plaintiffs' expert goes beyond the realm of supplementation. As such, Robinson says it is untimely and prejudicial, and should be disallowed. Robinson further says that the untimeliness of the revised report left Robinson unable to counter the hours of service and driver fatigue opinions in it by retaining and designating its own experts regarding such issues. Robinson also protests that it was unable to seek summary judgment effectively.

Plaintiffs counter that Robinson's motion to strike is procedurally improper. They also maintain that the revised report did not stray beyond proper supplementation. Alternatively, plaintiffs say that the situation does not warrant striking the revised report because the revision was substantially justified or harmless. For the reasons that follow, the motion is **DENIED**. However, the court will reopen expert discovery to allow Robinson to retain responsive expert(s) to the opinions in the revised report.

I. **Background**

Plaintiffs timely designated Lew Grill as an expert. Grill submitted his expert report on April 3, 2020. He then submitted a revised report on November 5, 2020. On November 19, 2020, Robinson took Grill's deposition. On November 23, 2020, Robinson filed this motion, asking the court to strike the November 5 revision.[1]

The revision provides an analysis of telemetric data and an express opinion that the truck driver involved in the collision here had not received sufficient rest time prior to the collision and that, ultimately, driver fatigue was a factor in

---

[1] By this motion, defendants also asked the court to strike the revised report of plaintiffs' expert Steven Belyus. Because plaintiffs have voluntarily withdrawn Mr. Belyus's revision, that issue is now moot, and only Mr. Grill's revision is at issue.

2

the collision.  At his deposition, Grill explained that he had not provided specific opinions as to hours of service or driver fatigue in his initial report because he had not received certain documents that he believed were forthcoming and that he ordinarily did not complete the necessary analysis without.[2]  He was also concerned that if he did such an analysis without those documents, he might need to supplement his report when they finally arrived.  To further complicate matters, he was stuck in Italy during the relevant timeframe because of COVID-19 issues.  Ultimately, when it became clear that the documents Grill was awaiting to complete his analysis (in the way he usually completes it) were not forthcoming after all, he completed the analysis without them.

When Robinson filed this motion on November 23, 2020, trial was set for February 17, 2021.  During briefing, the court continued trial to July 20, 2021.  More recently, the court continued trial to September 14, 2021.  Other than reserving the right to do so in their reply brief, Robinson has not sought permission to engage an expert to respond to Grill's driver fatigue analysis or further depose Grill on his revised report.

---

[2] Plaintiffs requested these documents in discovery in November 2018 but had not received them as of December 2020.

**II. Discussion**

Exclusion is not appropriate here. For the court to exclude the revision and the anticipated testimony that will flow therefrom, there are three things that the revision must <u>not</u> be. First, the revision must <u>not</u> be a proper supplementation. Second, the revision must <u>not</u> be substantially justified. And third, the revision must <u>not</u> be harmless. The first two are close calls. The third, however, is not a close call: The revision is harmless.[3]

**1. The Supplementation Issue**

If the revision amounts to proper supplementation, the analysis stops there because it would be timely. Rule 26(e)(1) provides:

> (1) In General. A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

---

[3] The court rejects plaintiffs' threshold argument that the motion is procedurally improper because defendants have styled it as a motion to strike. Regardless of the motion's title, it is a proper motion to exclude under Rule 37.

4

Fed. R. Civ. P. 26(e)(1).

Courts in this circuit have varied views regarding the scope of proper supplementation under Rule 26(e). Most appear to have a conservative view. For example, one court stated that "[t]he only appropriate supplementation occurs when the previous disclosures 'happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, *misleading*.'" Severn Peanut Co. v. Indus. Fumigant Co., No. 2:11-CV-00014-BO, 2014 WL 198217, at *2 (E.D.N.C. Jan. 15, 2014) (emphasis in original) (quoting Akeva L.L.C v. Mizuno Corp., 212 F.R.D. 306, 310 (M.D.N.C. 2002)).

In an example of the competing, more liberal view, another court allowed a revised report as proper supplementation when the original report substantially contained the same theories of liability. See Kinlaw v. Nwaokocha, No. 3:17-CV-772, 2019 WL 2288445, at *4 (E.D. Va. May 29, 2019). The original report there was "not a picture of clarity," and the expert had sought to revise his report, in part, to respond to the opposing party's attempt to "corner" the expert there by wielding certain language in the original report against him. See id. at *4. The purpose of the revision was "to make clear what the first report already said and to clarify [the expert's] deposition testimony." Id. at *4. The court found that "although the second report did add more detail to the first report, it is

5

certainly not the case that the second report contained new opinions." Id. at *5.

Among the courts that take a more conservative approach to supplementation, many draw a bright line at revisions based on information that was available to the expert at the time of the original report. See WPS Inc. v. Am. Honda Motor Co., No. 3:16-CV-2525-CMC, 2017 WL 4216159, at *4 (D.S.C. Sept. 22, 2017) ("Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report."); Moussouris v. Microsoft Corp., 311 F. Supp. 3d 1223, 1239 (W.D. Wash. 2018) ("Rule 26(e) should only apply when the party 'correct[s] an inaccuracy' or 'fill[s] in a gap based on information previously unavailable.'" (quoting Luke v. Family Care and Urgent Med. Clinics, 323 Fed. Appx. 496, 500 (9th Cir. 2009)); Faulkner v. Arista Recs. LLC, 46 F. Supp. 3d 365, 378 (S.D.N.Y. 2014) ("Under Rule 26, an expert's report that does not rely on 'any information that was previously unknown or unavailable to him,' should not be considered a supplemental report.") (quoting Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011)). If so, those courts say, the revision is not a supplement. See id.

Not all courts hew to this bright line. As one district court noted, "It is not *always* necessary, then, that the

6

supplement be based on information acquired after the initial report was disclosed; it is enough that a party learn the expert report was incomplete or incorrect in some material aspect." Talbert v. City of Chicago, 236 F.R.D. 415, 421 (N.D. Ill. 2006) (emphasis in original); see also Kinlaw (finding supplementation appropriate to clarify original report).

Some courts draw the line at "gamesmanship," particularly when it involves an attempt to defeat summary judgment. See Disney Enterprises, Inc. v. Kappos, 923 F. Supp. 2d 788, 795 (E.D. Va. 2013) ("Accordingly, '[c]ourts distinguish true supplementation (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by supplementing an expert report with a new and improved expert report.'") (quoting Gallagher v. S. Source Packaging, LLC, 568 F.Supp.2d 624, 631 (E.D.N.C. 2008)).

Even without the charge of gamesmanship, there is heightened concern when a purported supplement is a response to a dispositive motion and after the expert has been deposed. See Chapco, Inc. v. Woodway USA, Inc., 282 F. Supp. 3d 472, 492 (D. Conn. 2017) ("[E]xperts are not free to continually bolster, strength [sic], or improve their reports by endlessly researching the issue they already opined upon, or to continually supplement their opinions. The concern over

7

untimely supplementation is particularly strong here, where the alleged new matters were only disclosed in connection with the plaintiffs' dispositive motion, after Dr. Giachetti had been deposed.") (citations omitted); In re Asbestos Prod. Liab. Litig. (No. VI), 289 F.R.D. 424, 425-26 (E.D. Pa. 2013) ("Further, a supplemental report may be rejected where it is offered to rebut an argument raised in a summary judgment motion, or was served merely because a party simply wished to supplement.").

The situation here is unique because although the revision is based on information that was available to Grill when he submitted his original report, he testified that he anticipated receiving new information requested in discovery. Thus, the revision is based on a surprising lack of anticipated new information. Robinson contends that the proper course of action for Grill would have been to do the fatigue analysis based on the limited information he had and provide a disclaimer that he would supplement if and when he received the anticipated information.

In many cases, disallowing supplements based on old information is likely appropriate. But the court is unpersuaded that drawing a bright line to exclude all such supplements is the best approach. The court is more inclined to follow Judge Payne's approach in Kinlaw and consider whether the first report

provides fair notice of the theories of liability in the revised report or, instead, provides a new opinion.

Even under the "close reading" that is an appropriate part of this more liberal standard, it seems to be a stretch to say that Grill's revision provides no new opinion. See Kinlaw, at *4. True, Grill's opinion regarding driver inattention in his original report is not inconsistent with his opinions in his revised report regarding driver fatigue. But hours of service and fatigue opinions are likely too specific and distinct to relate back to Grill's opinions regarding driver inattention. Thus, the court will assume that the revision provides a new opinion and is therefore not a proper supplement.

### 2. Rule 37(c) Analysis

When a party has failed to make disclosures required under Rule 26(a), Rule 37(c)[4] provides that "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . ." Fed. R. Civ. P.

---

[4] As plaintiffs point out, courts in this circuit reasonably differ as to whether Rule 16 or Rule 37 should apply in a situation like this. Plaintiffs cite Judge Dillon's insightful analysis regarding the boundaries between these two rules. See Thompson v. United States, No. 7:14-CV-00092, 2015 WL 2412249, at *10 n.3-6 (W.D. Va. May 21, 2015). Because the difference is largely academic here, and because defendants have moved for exclusion under Rule 37, the court will complete its analysis under Rule 37.

9

37(c).[5]  But there are two exceptions:  "(1) when the failure to disclose is 'substantially justified,' and (2) when the nondisclosure is 'harmless.'"  Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir.2003)(quoting Fed. R. Civ. P. 37(c)).  "The Advisory Committee viewed these provisions as 'coupled' and designed 'to avoid unduly harsh penalties.'"  8B Charles Alan Wright & Arthur R. Miller, et al., Federal Practice and Procedure § 2289.1 (3d ed.).

The burden to show justification or harmlessness under Rule 37(c) lies with the party facing sanctions.  Id. at 596 (citing Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001)).  District courts enjoy broad discretion in evaluating whether one of these exceptions applies to a particular case.  S. States, 318 F.3d at 597.  Kappos, 923 F. Supp. 2d at 796.  In making this determination, the following factors should be considered:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of the party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

---

[5] Rule 37 provides for sanctions alternative to exclusion, but these "are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party."  S. States Rack and Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003) (emphasis in original).

10

Id. The first four factors go mainly to the harmlessness analysis, while the fifth factor goes mainly to the substantial justification analysis. See id.[6]

Discovery sanctions serve both to remedy rule violations and to deter future violations. Since the 1980s, courts have justified harsh sanctions in the name of deterrence. Federal Practice and Procedure § 2284. But despite this longstanding trend, "it seems fitting that courts should make the punishment fit the crime and should take care not to impose a drastic sanction that will prevent adjudication of a case on its merits except on a clear showing that this course is required." Id.

As to justification, Grill explained that the lateness of the driver fatigue opinion was due to his misunderstanding that certain documents were forthcoming. Doing the analysis without those documents is more burdensome and potentially less precise. Additionally, he was stuck in Italy during the height of the COVID-19 pandemic. As Robinson point out, there was arguably a better approach: Complete the analysis without the additional documents and then supplement when they arrive. While Grill was perhaps overly optimistic that he would receive the documents,

---

[6] Although the Southern States factors are a useful guide, the court need not "tick through" them in deciding a Rule 37(c) motion. Wilkins v. Montgomery, 751 F.3d 214, 222 (4th Cir. 2014).

11

his course of action does not indicate an attempt at gamesmanship or a lack of diligence. Because the court decides that the late disclosure was harmless, however, the court need not determine whether it was substantially justified.

As to harmlessness, "[c]ourts have explained that conduct is harmless 'when there is no prejudice to the party entitled to that disclosure.'" (citing Sender v. Mann, 225 F.R.D. 645, 656 (D. Colo. 2004)). The evidence at issue here appears to be important.[7] So, with the remaining Southern States factors in mind, the basic question becomes whether plaintiffs have met their burden of showing that the lateness of evidence will not prejudice Robinson.

Plaintiffs contend that any prejudice either has been or can be easily cured. They say that Robinson has already deposed Grill regarding his hours of service and driver fatigue opinions

---

[7] It is not entirely clear which way this factor generally cuts. Compare EQT Gathering, LLC v. Marker, 2015 WL 9165960, at *11 (S.D.W. Va. Dec. 16, 2015) ("The Court therefore also finds that the importance of the [evidence] is debatable, at best, and weighs in favor of excluding [it]."), with Bresler v. Wilmington Tr. Co., 855 F.3d 178, 218 (4th Cir. 2017) (Wynn, J., dissenting) (stating that as importance increases, so does likelihood of prejudice and importance of timely disclosure), and S. States, 318 F.3d at 598-99 (approving the district court's analyzing this factor "from the perspective of both parties.").

and that Robinson can retain an expert to counter those opinions with the court's permission.

Courts are divided as to whether this is a good argument. Compare Spray-Tek, Inc. v. Robbins Motor Transp., Inc., 426 F. Supp. 2d 875, 881 (W.D. Wis. 2006) (accepting argument where there were "approximately three weeks to depose [the expert] and to 'solicit expert opinions'" in rebuttal and noting that the motion was one of "form over substance"), with Breining v. Ocwen Loan Servicing, LLC, 2018 WL 4382204, at *3 (E.D. Cal. Sept. 13, 2018) (rejecting argument because party making it did not offer legal support for it), and Rhodes v. Energy Marine LLC, 2016 WL 8199310, at *6 (D. Ariz. Sept. 19, 2016) ("Plaintiff asserts that her failure to timely disclose was not prejudicial because 'Robinson are free to request depositions . . . in order to cure any claimed deficiency.' It is not Defendant's responsibility, however, to depose Plaintiff's experts in order to understand their opinions."), and Nw. Pipeline Corp. v. Ross, 2008 WL 1744617, at *9 (W.D. Wash. Apr. 11, 2008) (rejecting the argument and suggesting that it would render Rule 37(c)(1) "toothless").

Importantly, litigants are expected to take necessary action to mitigate any surprise that late-disclosed evidence may cause. See Bresler v. Wilmington Tr. Co., 855 F.3d 178, 194 (4th Cir. 2017). In Bresler, the Fourth Circuit noted that

13

although the party claiming surprise in that case had received the evidence it sought to exclude nearly two months before trial, it did not take the expert's deposition "or to take any other steps to mitigate the purported surprise caused by the plaintiffs' delayed disclosure." Id. Accordingly, the party claiming surprise could not claim that the evidence hampered its "ability to conduct its defense in any material respect." Id. The court held that there was no abuse of discretion in the trial court's admitting the evidence. Id.

Under Bresler and the Southern States factors, the revision should not be excluded. While there may have been some surprise, there is a clear opportunity to cure it without disruption of the trial. Trial is well over two months away. Moreover, Robinson has not sought to mitigate any surprise by moving to reopen expert discovery. Robinson says that doing so would have amounted to a waiver of its untimeliness objection in this motion. (ECF No. 222, at 10 n.4 ("In essence, Plaintiffs seek to force Robinson to waive its objection by seeking an amendment to the scheduling order.").) While the problem is of plaintiffs' making, Robinson is nevertheless expected to take reasonable steps toward a solution. Robinson could have moved

to reopen expert discovery while explicitly preserving its untimeliness objection.[8]

The court reopens expert discovery as follows to allow Robinson to retain responsive expert(s):

1. Robinson may designate expert(s) responsive to Grill's hours of service and fatigue opinions by July 15, 2021.[9]
2. Robinson's expert(s) must submit their expert reports to plaintiffs by August 2, 2021. The parties must work together to set depositions of the expert(s) as soon as practicable thereafter.
3. To the extent there are additional scheduling concerns, the parties should submit a brief motion with a proposed order modifying additional dates as necessary.

## III. Conclusion

In summary, the court has fully considered the parties' written submissions and arguments and finds that the late

---

[8] The court acknowledges but finds insufficient the claimed prejudice that the late disclosure interfered with defendants' ability to seek summary judgment. Moreover, the defendants also could have sought an amendment to the scheduling order allowing them to file a renewed motion for summary judgment.

[9] Alternatively, defendants' current experts may file revisions to their reports to include opinions responsive to Grill's revised report.

disclosure of Grill's revised report was harmless because any real prejudice will be cured by allowing Robinson to retain expert(s) responsive to the opinions to which they object. Accordingly, and for the reasons expressed above, Robinson's motion to strike (ECF No. 202) is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED** this 2nd day of July, 2021.

ENTER:

*David A. Faber*
David A. Faber
Senior United States District Judge