IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

Clinton Eugene Gilley, as Administrator
of the Estate of CARL DAVID GILLEY,
Nicole Leigh Le, as Administrator of the
Estate of CHRISTINE TARA WARDEN GILLEY,
and Clinton Eugene Gilley and Nicole
Leigh Le as Co-Administrators of the
Estates of J.G. and G.G., minor children,

     Plaintiffs,

v.                         CIVIL ACTION NO. 1:18-00536

C.H. ROBINSON WORLDWIDE, INC.,
J&TS TRANSPORT EXPRESS, INC.,
and BERTRAM COPELAND,

     Defendants.

## MEMORANDUM OPINION AND ORDER

     Plaintiffs, defendant C.H. Robinson ("Robinson"), and

defendant Bertram Copeland ("Copeland") have filed several

motions in limine that are pending before the court.[1]   The

---

[1] Except for plaintiffs' motion to exclude criminal proceedings
and backgrounds (ECF No. 244), defendant J&TS Transport Express,
Inc. ("J&TS") opposes plaintiffs' motions in limine. (See ECF
No. 276.)  And J&TS joins in Robinson's and Copeland's motions
in limine.  (See id.)

Likewise, Copeland joins in Robinson's motion in limine
regarding insurance, financial information, and punitive damages
(ECF No. 237) to the extent that it seeks exclusion of evidence
pertaining to punitive damages, which plaintiffs have waived.
(See ECF No. 259.)  Copeland also joins in Robinson's motions
(1) to exclude the compliance review (ECF No. 238); (2) to
exclude the Gainesville video (ECF No. 239); (3) to limit
arguments of counsel (ECF No. 241); and (4) to exclude claims

specific rulings on the motions in limine are set forth below, along with the court's reasoning.

## I.  Plaintiffs' Motions

### a. Motion to Exclude Criminal Proceedings and Backgrounds (ECF No. 244)

The collision at issue generated a criminal case in state court.  Plaintiffs ask the court to exclude reference to the results of that criminal case.  Plaintiffs further ask the court to require that any party seeking to impeach a witness using that witness's criminal history must first obtain approval from the court.

Robinson reads plaintiffs' motion as one to exclude all criminal histories generally and argues that any criminal history of Copeland (including traffic violations) should be excluded.  (See ECF No. 262, at 1.)  Plaintiffs respond that although they do not intend to introduce Copeland's driving record as propensity evidence, they do intend to introduce it as evidence of J&TS's alleged negligence in hiring plaintiff:  that it did not ask, did not discover, or did not care about blemishes on Copeland's driving record.  Plaintiffs further say that they intend to introduce evidence of Copeland's marijuana charge (post-dating the collision) only if he testifies that he

---

for pain, suffering, and pre-death terror (ECF No. 242).  (See id.)

had not used marijuana since long before the collision, as he
did in his deposition (which post-dated a marijuana possession
charge), as impeachment.

The court will take up the broader issues that Robinson
raises below.  Because plaintiffs' more targeted request is
unobjectionable, the court will grant this motion:  The state
criminal proceedings arising from the collision are not
admissible, and any party wishing to impeach a witness using
that witness's criminal history must obtain court approval
first.

### b. Motion to Preclude Argument That Following Regulations Provides Tort Immunity (ECF No. 245)

Plaintiffs ask the court to preclude Robinson from arguing
that its legal duties extend no further than compliance with the
Federal Motor Carrier Safety Regulations.

It would be inappropriate to argue that, as a matter of
law, compliance with the federal regulations "immunizes"
Robinson or that Robinson's pertinent legal duty is limited to
following the regulations.  Courts have recognized that
Robinson's state-law duties and federal regulatory duties,
though perhaps related, are distinct.  See Jones v. C.H.
Robinson Worldwide, Inc., 558 F. Supp. 2d 630, 645 (W.D. Va.
2008); Schramm v. Foster, 341 F. Supp. 2d 536, 551 (D. Md.
2004).  It is "not [West Virginia] law" that "compliance with a

regulation is *per se* the exercise of due care." <u>Miller v.
Warren</u>, 390 S.E.2d 207, 209 (W. Va. 1990).  The state's high
court has held that it is error for a jury instruction to <u>even
to imply</u> the existence of "a rebuttable presumption that
compliance with regulations constitutes due care."  <u>Id.</u>

On the other hand, it appears permissible for Robinson to
point out that the limits on the relevant federal regulations
and its compliance with them, because such compliance is
"competent evidence of due care." <u>See id.</u> It likewise appears
permissible to argue that there was no breach here because it
was reasonable not to go beyond the regulatory requirements.
The parties will dispute what the exercise of reasonable care
here required.  The jury will need to determine whether it was
unreasonable not to take additional precautions and whether
those alleged untaken precautions proximately caused the
collision and resulting deaths.  In other words, Robinson may
argue and present evidence that compliance with the regulations
was reasonable as a matter of <u>fact</u>, but it would be
inappropriate to argue that such compliance was reasonable as a
matter of <u>law</u>.[2]

---

[2] As the court previously noted, Robinson is also free to argue
that it complied with industry standards and that such
compliance made its conduct reasonable.  (ECF No. 293, at 16
n.5.)

It is true that "other circumstances" are sometimes necessary to show negligence notwithstanding compliance with a regulatory regime.  Id.  But Chief Justice Neely described this other-circumstances requirement as "tautological," explaining,

> Truth is, no care at all will meet the standard of care if circumstances do not appear that require some care.  That is to say, because the plaintiff has the burden of proof on the defendant's negligence, he must point to some risk that the defendant should have been aware of.  But the plaintiff must always do so to avoid a directed verdict for the defendant.  If the plaintiff is unable to show prima facie negligence by failure to comply with a statute, he must prove negligence in some other particular.

Id.  Thus, the other-circumstances requirement simply reiterates plaintiffs' burden to prove unreasonable conduct related to a foreseeable risk.

The court will grant this motion.

### c. Motion to Permit Certain Evidence of Insurance to Prove Control (ECF No. 246)

The court having granted summary judgment on plaintiffs' vicarious liability claim, (see ECF No. 293), this motion appears to be moot, and the court will deny it as such. Plaintiffs are invited to renew this motion if the court is mistaken as to its mootness.

**d. Motion to Exclude (A) Prior Accidents, (B) Subsequent Guardrail and Accident, (C) Lobbying of Family and Friends, and (D) Improper Lay Witness Opinions (ECF No. 247)**

**Prior accidents.** In support of its theory that certain state agencies (the "West Virginia Agencies") caused this collision by not timely installing a median barrier on the portion of the West Virginia Turnpike ("Turnpike") where the crossover occurred, Robinson wishes to present historical crash data from a larger portion of the Turnpike that encompasses the site of the crossover here.[3] An expert for Robinson apparently relies on this data for his opinions that the West Virginia Agencies were on notice about the need for a median barrier and that their failure to act in the face of such notice violated safety standards.

Plaintiffs ask the court to preclude this data, which chronicles more than 250 collisions over the years, pointing out that the majority of them do not involve crossovers, and only two involve tractor-trailers. Plaintiffs say that the dissimilarity of the prior accidents renders them irrelevant and unfairly prejudicial. Plaintiffs maintain that only crossover collisions are relevant and that, moreover, because Robinson has "failed to come forward with specific and credible facts to

---

[3] It appears that the crash data covers collisions from Mile Posts 20 to 28. The collision here occurred near Mile Post 22.

establish a factual foundation for the Court to determine whether [the] prior accidents were sufficiently similar to the fatal collision at issue," the historical crash data is inadmissible.  (ECF No. 247, at 4.)

"The frequency of accidents at a particular place would seem to be good evidence of its dangerous character-at least, it is some evidence to that effect."  District of Columbia v. Arms, 107 U.S. 519, 525 (1883).  Arms involved a nighttime walk in the nation's capital resulting in a deadly fall from an allegedly defective D.C. sidewalk.  Id. at 520.  The trial court had allowed a D.C. police officer to testify about "other accidents [that] had happened at that place."  Id. at 524.  "[The officer] remembered sending home in a hack [carriage] a woman who had fallen there, and had seen as many as five persons fall there."  Id.  The Supreme Court rejected the contention that the other accidents misled the jury, reasoning that the officer's testimony was admissible because it "tended to show the dangerous character of the sidewalk in its unguarded condition" and "the character of the place was one of the subjects of inquiry."  Id. at 525.

Nevertheless, there are limits to the admissibility of other-accidents evidence.  "Proof of prior accidents is not easily admitted into evidence because it often results in unfair prejudice, consumption of time, and distraction of the jury to

collateral matters." Blevins v. New Holland N. Am., Inc., 128
F. Supp. 2d 952, 961 (W.D. Va. 2001).  A threshold matter is
what the other accidents are introduced to prove.  If their
purpose is limited to notice of a dangerous condition, prior
accidents "need only be sufficiently similar" such that the
allegedly negligent party would be "aware of the of the
dangerous situation." Benedi v. McNeil-P.P.C., Inc., 66 F.3d
1378, 1386 (4th Cir. 1995).  That the similarity requirement is
"more relaxed" when evidence of prior accidents is offered for
notice suggests that offering such evidence for purposes beyond
notice is at least sometimes permissible.  See id.

But prior accidents are generally disfavored as proof of
negligence or causation.  See Blevins, 128 F. Supp. 2d at 960
("Evidence of similar accidents is not generally admissible for
the purpose of proving negligence or causation.").  Outside the
notice context, a prerequisite for other-accidents evidence
appears to be that the other accidents occurred under
*substantially similar circumstances*." See Weir v. Crown Equip.
Corp., 217 F.3d 453, 457 (7th Cir. 2000) (emphasis in original).
The circumstances need not be identical however:  Jurors are to
be trusted to discern the probative value of a prior accident
that was substantially similar but perhaps not identical.  See
Mihailovich v. Laatsch, 359 F.3d 892, 908 (7th Cir. 2004).

It does not appear that Robinson intends to use the prior accidents for a purpose other than notice to the West Virginia Agencies.  Robinson contends that, under highway safety standards, even dissimilar accidents inform whether a median barrier should be installed.  Thus, it would appear that the prior accidents will be offered as notice of a condition that highway safety standards would deem sufficiently dangerous to prompt action.  These highway safety standards presumably inform, but do not dictate, whether the West Virginia Agencies were negligent.

Without evaluating the foundation in context, it is difficult to tell the extent of the prior accidents that will be admissible.  If Robinson can lay a foundation that the prior accidents, however unrelated they may have been, had appreciable bearing on whether highway safety standards made corrective action necessary, then the full gamut of prior accidents may be relevant and admissible.  If, on the other hand, it is entirely (or almost entirely) crossovers that count, or crossovers under sufficiently similar circumstances that count, only those will be relevant.[4]  Thus, the court will deny this portion of the motion without prejudice.

---

[4] The relevance of the prior accidents is whether the state agencies had notice of a need to take corrective action. Because Robinson's expert is expected to testify that the agencies did have such notice and should have taken corrective

9

**Subsequent accident.**  Robinson also wishes to introduce a report of an accident post-dating both the collision here and the installation of a median barrier in the environs of Mile Post 22.  The report describes an incident where the driver of a tractor-trailer lost control of his vehicle, which ultimately came to rest against the barrier.  The report states that, like here, the driver was southbound near Camp Creek.  The report locates the crash at Mile Post 21, which is about a mile south of where the instant collision occurred.

The subsequent accident is similar in that it involved a southbound, out-of-control tractor-trailer in the same general vicinity and a trajectory generally toward the median.  On the other hand, there are significant differences.  First, the topography near Mile Post 21 is significantly different than near Mile Post 22.  Whereas the latter is a downhill straightaway (southbound), the former features an eastward curve and gradual leveling.  Also, the report states that it was raining (although this is not identified as a contributing circumstance) and that the driver jackknifed prior to making contact with the guardrail.  The curve in the road and the

---

action, the historical crash data raises the specter of cumulativeness.  On the other hand, the expert should be allowed to explain how he arrived at his opinion.  The court will need to evaluate whether the evidence becomes cumulative in context.

jackknifing, in particular, raise doubt as to whether this accident occurred under substantially similar circumstances.

Notably, however, it appears that Robinson intends to offer this subsequent accident as evidence merely to "show[] that in some instances guardrails are effective at mitigating the movement of a tractor-trailer." (ECF No. 260, at 5.)  Although the similarity between the accident here and the subsequent accident is not great enough to offer the subsequent accident for specific causation (that a guardrail would have prevented this collision), it is admissible as evidence of the more modest general causation assertion (that guardrails sometimes work against tractor-trailers).  As noted below, if Robinson produces this evidence, fairness requires that plaintiffs be allowed to counter it with the Gainesville video to support their claim that sometimes guardrails are ineffective against tractor-trailers.  A limiting instruction may be appropriate in this scenario.

**Guardrail installation**.  Under Rule 407, subsequent remedial measures are inadmissible to prove negligence but admissible to prove feasibility of a precautionary measure. Robinson contends that it intends to use the evidence to rebut any claim that installation of a guardrail would take years of lead time.  If offered in response to show feasibility of a shorter timeframe, the evidence is permissible under the plain

11

language of Rule 407, but a limiting instruction may be appropriate.

Even if plaintiffs do not open the door to the feasibility purpose, however, the fact of the subsequent remedial measure necessarily will come up if Robinson offers evidence of the subsequent accident discussed above.  The policy behind Rule 407 is to "encourage[e] potential defendants to remedy hazardous conditions without fear that their actions will be used as evidence against them."  TLT-Babcock, Inc. v. Emerson Elec. Co., 33 F.3d 397, 400 (4th Cir. 1994).  Rule 407's prohibition has been held not to apply to remedial measures taken by nondefendants on the reasoning that the threat of liability will not deter their remedial conduct.  In TLT-Babcock, the subsequent repairs at issue were taken by a nondefendant that does not appear to have been a "potential defendant," unlike here, so that case seems distinguishable.

But assuming that Rule 407 does not bar the remedial measures by the nonparty West Virginia Agencies here, the court agrees that such evidence still has a long history of being disfavored.  As Justice Gray explained in 1892,

> it is now settled, upon much consideration, by the decisions of the highest courts of most of the states in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had

12

been negligent before the accident happened, and is
calculated to distract the minds of the jury from the
real issue, and to create a prejudice.

Columbia & P.S.R. Co. v. Hawthorne, 144 U.S. 202, 207 (1892).
Given the marginal relevance of the subsequent remedial measure
and the likelihood of confusing the issues, Rule 403 balancing
probably counsels against admission.

Pragmatic considerations, however, counsel in favor of
admitting evidence of the guardrail.  First, it will be
impossible to admit the evidence of the subsequent accident
without acknowledging the subsequent installation of a guardrail
a mile away from where the collision here occurred.  Second,
most if not all of the jury panel in this case likely is aware
that a guardrail is now in place at Mile Post 22.  The
appropriate remedy for the substantial risk of confusing the
issues here is a limiting instruction.

**Lobbying efforts of family and friends and lay witness
testimony.**  Plaintiffs ask the court to exclude any evidence of
efforts by family or friends of the decedents to bring about the
installation of a guardrail at the site of the collision and any
lay opinions by the family members about whether the lack of a
guardrail caused the collision.  Apparently, an uncle of one
decedent and a brother of another had some level of interaction
with the West Virginia Agencies regarding possible installation

13

of a barrier.  No family member testified in deposition about
whether the lack of a barrier caused the collision.

> In a nutshell, plaintiffs' position is:

> It strains credulity that [the decedents'] family or
> friends could say or do anything that would prove (or,
> for that matter, disprove) causation when none have
> any expertise in any of the relevant areas, none were
> eyewitnesses to the collision, and most do not know
> anything about the Camp Creek roadway.  The only
> proper area of inquiry for any of David and Christine
> Gilley's family and friends is regarding damages under
> West Virginia § 55-7-6(c) (i.e., their sorrow, mental
> anguish, and solace; the services, protection, care,
> and assistance provided by David and Christine
> Gilley).

(ECF No. 247, at 9-10.)

In opposition, Robinson contends that the jury should know
that the "family members recognized the need for a guardrail and
pleaded with the West Virginia Agencies to take appropriate
action."  (ECF No. 260, at 2.)  Robinson further contends that
the uncle who communicated with the state agencies has
repeatedly held himself out as the family's representative.
Robinson suggests that the evidence can be used to impeach the
family members and show that they "changed their position
regarding fault that may be attributed to the West Virginia
Agencies."  (Id. at 6-8.)

It is unclear whether Robinson intends to use the
ostensible lobbying efforts for purposes beyond impeachment.  As
stand-alone evidence, it is difficult to see any relevance in

how the family originally analyzed liability, even assuming their analysis changed.  As to the facts, they were not eyewitness; nor are they expert accident reconstructionists.  As to the law, legal opinions would not be admissible even if some family members were lawyers.[5]  Accordingly, the family members' opinions about liability are no more admissible than the opinions of members of a test jury.

The only conceivably permissible use for this evidence is impeachment.  But plaintiffs would first need to open the door by eliciting opinions from the family members about liability (which would be plainly objectionable) or about the administrators' subjective motivations for filing the case (which may also be objectionable).  Robinson cannot open the door to such evidence for itself by eliciting such opinions or testimony about such motivations.  As for arguments of counsel, it seems that counsel would open the impeachment door only by representing their clients' views on liability or their clients' subjective motivations in a way that contradicts the evidence that Robinson intends to use as impeachment.

In sum, before there is impeachment, there must be relevant evidence to impeach.  The evidence of the ostensible lobbying

---

[5] The family-member administrators' reasoning for their strategic choices in the filing of the lawsuit are likely covered by the attorney-client privilege, as well.

efforts of family and friends, and any lay opinions about liability or causation from family or friends, should be presumed inadmissible unless something quite unexpected happens at trial to make this evidence admissible for impeachment.

The court will therefore grant the motion in part and deny it in part, as described above.

## II.   Robinson's Motions in Limine

### a. Motion to Exclude Amounts of Insurance, Financial Information, and Evidence or Argument Relating to Punitive Damages (ECF No. 237)

Because the court has granted summary judgment as to plaintiffs' vicarious liability claim against Robinson, and because plaintiffs have waived their claim for punitive damages, it would appear that this motion is moot as to all but the second category:  evidence of Robinson's financial condition. Plaintiffs acknowledge the limited purposes for which such evidence is admissible and say that they intend to introduce it for the limited purpose of rebutting a potential defense that it is infeasible to conduct the safety vetting plaintiffs say was required here.  In reply, Robinson maintains that it can raise a feasibility argument without opening the door to evidence of its revenue, profits, and valuation.

On one hand, plaintiffs have a right to conduct an effective cross-examination of witnesses who may testify that the cost of the taking the precautions at issue would be too

16

high.  On the other hand, the court agrees the door cannot be so
easily opened to Robinson's financial condition.  And it would
appear that plaintiffs can cross-examine witnesses on cost
feasibility by focusing on the transactional-level economics;
they likely need not resort to evidence of Robinson's financial
condition on a grand scale.  Thus, evidence of Robinson's
overall financial condition is not admissible unless the door is
clearly opened with testimony, for example, that Robinson's size
or overall net profits render it unable to take the precautions
that plaintiffs urge or unless, in the context of trial, it
appears that plaintiffs will be denied a fair opportunity to
cross-examine witnesses on the issue without resorting to
financial-condition evidence.

Therefore, to the extent the motion is not moot, the court
will grant it subject to potential reconsideration in the
context of trial.

**b. Motion to Exclude FMCSA Compliance Review (ECF No. 238)**

After the collision, the Federal Motor Carrier Safety
Administration ("FMCSA") completed a Compliance Review ("CR") of
defendant J&TS's operations, resulting in an overall
"Unsatisfactory" rating.  Robinson says that the CR is
inadmissible both by statute and by the Rules of Evidence, and
asks the court to exclude it.  Copeland argues that the report
is hearsay and asks the court to exclude it.

17

By statute, certain reports or investigations of motor-carrier accidents are inadmissible in litigation involving the same subject matter:

> No part of a report of an accident occurring in operations of a motor carrier, motor carrier of migrant workers, or motor private carrier and required by the Secretary, and no part of a report of an investigation of the accident made by the Secretary, may be admitted into evidence or used in a civil action for damages related to a matter mentioned in the report or investigation.

49 U.S.C. § 504(f) (emphasis added).

The question is whether the CR is "a report of an investigation of the accident made by the Secretary." The FMCSA flagged J&TS for a CR because of the collision here, and the Illinois Department of Transportation completed the CR on the FMCSA's behalf. There is no dispute that the Secretary (through the state agency) "made" the report. But the parties sharply dispute whether it was "of an investigation of an accident."

A typical purpose of statutory provisions like the one here, which bars admission of certain accident reports, is to "encourage[e] full and frank reports while protecting those who generate the information against the use of such reports in litigation." See Mueller & Kirkpatrick, 2 Federal Evidence § 5:5 (4th ed.). Although it was a government agency that ultimately "generate[d]" the information here, the CR drew upon information provided by Copeland and J&TS's officers. Thus,

exclusion would at least somewhat further the purpose of the statutory provision.

On the other hand, while the CR does have a section regarding the collision, it is a comprehensive review of J&TS's operations that sweeps much broader than the collision, so it is awkward at best to label it an investigation of an accident. There is a dearth of on-point case law on this issue.  One guiding principle, though, is that "statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth."  Pierce County v. Guillen, 537 U.S. 129, 144 (2003).  Given the ambiguity, this interpretive canon is helpful in reaching the conclusion that § 504(f) does not prohibit exclusion of the CR in its entirety. The portion regarding the accident, however, is likely inadmissible under § 504(f); accordingly, and because plaintiffs do not oppose redaction of that portion, it should be redacted.

The question becomes whether there are portions of the CR that are relevant, that pass Rule 403 balancing, and are not being impermissibly offered as propensity evidence.  As to relevance, while Robinson is correct that much of the CR appears irrelevant as to causation, the CR generally appears probative of whether J&TS was a competent and careful contractor.

As to Rule 403 balancing, it is notable that plaintiffs presumably will present expert testimony that J&TS was not a

careful and competent contractor.  To the extent that the CR merely reiterates that opinion, it may be cumulative.  There is also some risk that the jury will consider evidence that goes only to incompetence as evidence of causation.

Next, as to whether the CR is impermissible propensity evidence under Rule 404(b), this again appears to be a problem only if it is offered to prove causation.  Plaintiffs say that it is not propensity evidence because it shows knowledge. Regardless of whether "knowledge" is the correct label, there does not appear to be a Rule 404(b) problem if the evidence is offered simply to show the alleged incompetence of the contractor, not causation.

Finally, in his separate motion on this topic (ECF No. 230), Copeland urges that the report is hearsay and does not, at least in substantial part, qualify under the public records exception.  Rule 803(8) provides that the rule against hearsay does not apply to

[a] record or statement of a public office if

(A)  it sets out:

. . .

(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Copeland appears to argue that to the extent the findings
in the report draw upon interviews the investigator conducted,
those findings do not qualify under this hearsay exception.
However, the one case that Copeland cites in support of this
proposition states,

> The [first-hand knowledge] criterion can be satisfied
> in either of two ways.  Ideally, the author of the
> document actually will have had first-hand knowledge
> of the factual findings which he has made.  However,
> if he does not, the first-hand knowledge requirement
> imposed by Federal Rule of Evidence 602 still can be
> satisfied if the author had first-hand knowledge of
> the statements made by declarants who did have first-
> hand knowledge of the facts mentioned in the factual
> findings made in the public document.

Fraley v. Rockwell Int'l Corp., 470 F. Supp. 1264, 1266–67 (S.D.
Ohio 1979) (emphasis added).  Put more directly, a public record
"will not be excluded merely because the author did not have
firsthand knowledge of the reported matters."  Mathin v. Kerry,
782 F.3d 804, 809 (7th Cir. 2015).

To the extent the author of a public record merely quotes
another person, that portion of the report could be hearsay, but
the author's reliance on interviews in making factual findings
does not render those findings inadmissible.  Moreover, to the
extent the report here quotes Copeland or the owners of J&TS,
the quotes would appear to be statements of an opposing party

21

under Rule 801(d)(2).  Accordingly, they would not constitute hearsay.[6]

The CR is relevant to a disputed element of plaintiffs' negligent hiring claim (whether J&TS was a careful and competent contractor), and § 504(f) does not preclude its admission. There is some risk of jury confusion about the permissible purposes of the CR.  There is also some risk that the CR is cumulative of expected expert testimony regarding whether J&TS was a carful and competent contractor.  But plaintiffs have the burden of proof as to each element of their claim.  Weighing plaintiffs' right to present all relevant evidence on all contested elements of their claim against the risks associated with this evidence, the court finds at this point that a limiting instruction, not preclusion of the evidence, is the appropriate remedy.  If it becomes clear in the context of trial that the CR is cumulative in light of its narrow relevance, defendants are free to renew their objections.

Thus, the court will deny the motion, but the section of the report concerning the collision should be redacted.

---

[6] The court must reject plaintiffs' contention that the report is being used merely to show notice, and thus, not for a hearsay purpose.  The report cannot show notice because it post-dates the collision.

### c. Motion to Exclude Procedures Involving High Value Cargo (ECF No. 243)

Plaintiffs would like to present evidence of the process that Robinson uses to select carriers to transport high-value cargo.  Plaintiffs say the juxtaposition between those procedures, which can arguably be described as carrier vetting, and the more minimal procedures for selecting a carrier for non-high-value cargo tend to show the unreasonableness of Robinson's conduct in this case (which did not involve high-value cargo).

Apparently, it is the shipping customer who selects the high-value option, which triggers the process plaintiffs wish to show.  The essential purpose of the process is to make sure that attributes of the prospective carrier are such that the customer is likely to be made whole in the event of a cargo loss.  For example, Robinson makes sure the shipper has sufficient cargo insurance from an insurance company with a record demonstrating a willingness to pay claims.

Robinson asks the court to exclude evidence of the process for choosing carriers to ship high-value cargo, arguing that it is irrelevant and unfairly prejudicial.  This motion is well taken.  The process that Robinson uses for high-value cargo and the vetting procedures that plaintiffs contend are necessary for all of Robinson's shipments of cargo are apples and oranges.  Whatever process Robinson uses for high-value cargo has no

bearing on whether its process for other cargo is reasonable.
The evidence would serve only to distract the jury from the task
at hand:  determining whether Robinson's conduct at issue was
reasonable.  Accordingly, the court will grant the motion.

### d. Motion to Exclude Gainesville Video (ECF No. 239)

Robinson contends that certain West Virginia Agencies were
at fault for the collision here based on their failure to
install a median barrier.  Plaintiffs contend that the expected
evidence falls short of supporting this defense and that, in any
event, a barrier would not have withstood the force of the
tractor-trailer here.  To illustrate that barriers are sometimes
ineffective at stopping tractor-trailers, plaintiffs intend to
show the jury a video of a collision in Gainesville, Florida,
where a barrier was ineffective.  The video was captured on a
dashcam of another vehicle that was in an opposing traffic lane
and into which the tractor-trailer crashed.

Robinson and Copeland ask the court to exclude the video,
arguing that because it depicts a different set of circumstances
600 miles away from the site of the incident here, it is
irrelevant.  They further submit that even if it is relevant,
the video does not pass Rule 403 balancing because of its
alarming nature.  Robinson further submits that presenting the
video is tantamount to an improper golden rule argument because

the video invites the jury members to place themselves in the path of a deadly collision.

Plaintiffs contend that the relevance of the video is in countering the claim that a guardrail would have prevented the collision here.  They further contend that the video depicts a collision similar to the one here with a kind of barrier that Robinson contends would have been fully effective.  As to potential prejudice or confusion, plaintiffs say that the video does not depict disturbing images and that to the extent the jury may be confused, a limiting instruction can alleviate such confusion.  Finally, plaintiffs deny that this is a golden rule argument in disguise.

As discussed above, the court is allowing Robinson to introduce an unrelated accident (at Camp Creek) to show that guardrails are sometimes effective at stopping tractor-trailers. Both that accident and the Gainesville accident involve a driver losing control at a high speed and striking a guardrail. Although the Camp Creek accident occurred hundreds of miles closer to the collision here, it is not any more identical than the Gainesville accident.  Accordingly, if Robinson produces evidence of an unrelated accident to show that median barriers are sometimes effective at stopping tractor-trailers, plaintiffs should be afforded the same opportunity to present similar evidence to the contrary.

The court disagrees that the Gainesville video is tantamount to a golden rule argument.  "Only an argument that urges the jurors to put themselves in the place of the victim or the victim's family is an improper 'golden rule' argument.  Syl. pt. 4, State v. Clements, 334 S.E.2d 600, 603 (W. Va. 1985). Although Clements was a criminal case, it was cited approvingly in a recent civil case.  See Miller v. Allman, 813 S.E.2d 91, 105 (W. Va. 2018).  Although the video illustrates what it may look like to be on a collision course with a tractor-trailer, an illustration is not an invitation, and certainly not an explicit invitation.

For the reasons stated above, the court will grant the motion but will reverse its ruling and allow presentation of the Gainesville video if Robinson opens the door by presenting evidence of the Camp Creek accident.

**e. Motion to Exclude Criminal Proceedings (ECF No. 240)**

The parties agree that evidence of the criminal proceedings related to the collision is inadmissible.  In the remainder of the motion, Robinson asks that the court to exclude any evidence that Copeland committed a crime or received a traffic citation. Robinson argues that such evidence is irrelevant, unfairly prejudicial, and is impermissible propensity evidence.

In response, plaintiffs ask the court to admit evidence of Copeland's driving record as relevant to their claim that J&TS

26

was negligent in hiring Copeland—that it either failed to check his record or hired him despite it.  Plaintiffs contend that this is not impermissible propensity evidence under Rule 404(b) because it is offered not to show that Copeland acted in conformity with prior bad acts on a specific occasion.  As to the marijuana charge, plaintiffs say that there is an open question about drug use because the post-accident drug test did not meet federal regulations.

Copeland's driving record appears to be probative of plaintiffs' claim that Copeland's employer, defendant J&TS, was not a competent and careful motor carrier because it hired a driver despite a pattern of speeding violations.  It is not being offered to show that Copeland was speeding on a "particular occasion," which would be an improper purpose under Rule 404(b).  If necessary, the court can instruct the jury that Copeland's speeding citations are not competent evidence that he was speeding at the time of the collision.

The court agrees with Robinson that the marijuana charge is not admissible.  Even assuming that the post-accident drug test did not conform to federal regulations, which is not apparent from plaintiffs' citation in support of this assertion, this does not appear to support an inference that drugs were involved here.  There is no impeachment value because there is an insufficient basis to suspect drug use related to the collision

page

in the first place.  The suspicion arises only because of the potentially false deposition answer regarding drug use.  Thus, evidence of the marijuana charge is not admissible.

As explained above, the court will grant the motion in part.

### f. Motion to Limit Arguments of Counsel (ECF No. 241)

Robinson asks the court to limit certain arguments of counsel or references to a GAO report regarding the FMCSA. While acknowledging the difficulty in prospectively establishing bright lines for the scope of every impermissible argument, Robinson notes that "guidance on the boundaries" would be helpful and would minimize disruption during trial.  (ECF No. 241.)  Robinson identifies several argument types that the court should preclude:  (1) golden rule invocations; (2) exhortations to "send a message"; (3) so-called Reptile Theory arguments; (4) descriptions of Robinson calculated to convey that it is a big, out-of-state corporation; (5) personal opinions on damages, verdicts in similar cases, or per diem arguments; or (6) references to insurance.

Plaintiffs sensibly concede the inadmissibility of golden rule or "send a message" arguments.[7]  As to so-called Reptile

---

[7] Plaintiffs dispute the characterization of the Gainesville video as a golden rule argument.  As explained above, the video (by itself) is not a golden rule argument.  Defendants are free

arguments, plaintiffs resist an overbroad understanding of this category and the effectiveness of Reptile Theory as a means of manipulating jurors.  Plaintiffs say that, properly understood, an attempt to bypass jurors' prefrontal cortices would involve things like presenting spiders and snakes, not mere references to safety interests.  Plaintiffs maintain that they do not intend to manipulate jurors with improper arguments and ask that Reptile-based objections be taken up in context.  The court agrees that this is the best approach.

Descriptions intended to cast Robinson as a villainous big corporation are improper.  However, if Robinson opens the door by inaccurately characterizing its size or financial condition, such evidence may become admissible.  Personal opinions on damages, verdicts in similar cases, or per diem arguments are inadmissible.  The portion of the motion seeking exclusion of insurance evidence is moot because plaintiffs sought to introduce this evidence solely in support of their vicarious liability claim, which is no longer pending.

Robinson also asks the court to preclude arguments or questioning about the resources of the FMCSA, including questions drawing upon a GAO report suggesting that the FMCSA lacks sufficient resources to vet all new entrants for the

---

to object if plaintiffs attempt to use the video to make a
golden rule argument.

purpose of exposing "chameleon" motor carriers.  Robinson says
that applying the statement about a lack of resources outside
the chameleon-carriers context results in a "gross
mischaracterization" of the report.  (ECF No. 241, at 4.)

Plaintiffs concede that the FMCSA's alleged lack of
resources and the GAO report are inadmissible unless Robinson
opens the door, which plaintiffs say Robinson may do by arguing
that a reasonable broker relies on the FMCSA to do further
vetting.  Plaintiffs resist the suggestion that applying the GAO
report's statement about a lack of resources is a
mischaracterization, arguing that if resources are lacking for
the narrower issue of uncovering chameleon carriers, they are
lacking for the larger issue of safety vetting in general.

Plaintiffs' description of how the door may be opened is
well taken.  They should have the opportunity to rebut the
contention that brokers reasonably rely on the FMCSA to vet
carriers.  And although the context of the GAO statement was a
discussion regarding chameleon carriers, it is not obvious that
its probative value is limited to that context.  The context
goes to the weight of the statement, not its admissibility.

Finally, Robinson seeks to preclude "reverse engineering"
arguments that would seek to undermine the nonparty fault
statute.  As to the impermissibility of such arguments, the
parties basically appear to be on the page.  Plaintiffs concede

30

that they should not tell the jury to adjust damages to account

for apportionment of fault.[8]  Thus "reverse engineering"

arguments are not permissible.

As explained above, the court will grant the motion in

part.

### g. Motion to Exclude Pain, Suffering, and Pre-Death Terror Claims (ECF No. 242)

Based on the crash data recovered from the decedents' Honda

Pilot, plaintiffs have asserted a claim for pre-death terror as

to decedent Christine Gilley, who was driving at the time of the

collision.  The black-box data appears to suggest that Mrs.

Gilley applied the brakes and turned the steering wheel a second

or two before impact.  Robinson says that this claim should not

be permitted because it was disclosed for the first time in

plaintiffs' proposed pretrial order (not in their initial

disclosures or discovery responses regarding damages); it is not

recognized under West Virginia law; and there is insufficient

evidence to support it.  Plaintiffs contend that they never

waived a claim for pre-death terror, that defendants have had

the black-box data upon which the claim is based for a long

time, and that West Virginia law does not prohibit such claims.

---

[8] Plaintiffs request a jury instruction, however, that damages should neither be increased or reduced based on apportionment of fault.

Whether this court should predict that West Virginia's high court would recognize a claim for pre-death terror, and whether the black box evidence speaks for itself are complex questions. The court need not reach those questions, however, because it is readily apparent that the timing of this claim's disclosure denied defendants a fair opportunity to defend against it. Thus, evidence solely probative of a claim for pre-death terror is inadmissible.

### h. Motion to Exclude Evidence Solely Pertaining to Control (ECF No. 303)

In this motion, Robinson asks the court to deem a number of exhibits as relating solely to plaintiffs' claim for vicarious liability and thus, inadmissible given that the court has granted summary judgment in Robinson's favor on that claim.  In response, plaintiffs concede the principle that irrelevant evidence is inadmissible but maintain that some of the exhibits that Robinson identifies as going solely to vicarious liability actually have relevance outside that claim.  While the briefing on this motion may provide a helpful preview of disputes that may arise over relevance at trial, the court declines at this stage to sift through the exhibits and determine which ones maintain their relevance in the absence of the vicarious liability claim.  Thus, the court will deny the motion without

prejudice, and Robinson is welcome to renew its objections at trial.

### III. Copeland's Motions in Limine

#### a. Motion to Preclude Hearsay Investigative Reports (ECF No. 230)

The court's discussion above regarding Robinson's motion to exclude the CR addresses Copeland's argument against its admission.  Because plaintiffs consent to the exclusion of the Traffic Crash Report and Crash Analysis accident reconstruction report, the court grants the motion as to those documents only, and denies the motion as to the CR.

#### b. Motion to Preclude Evidence Concerning the Gainesville Florida Accident (ECF No. 231)

For the reasons explained above, the court will allow the Gainesville video if Robinson chooses to present evidence of the subsequent accident at Camp Creek.  For now, the court will grant the motion.

#### c. Motion to Preclude Evidence Suggestive that Defendant Copeland was in Violation of the FMCSA Hours of Service Regulations at the Time of the Subject Accident (ECF No. 232)

Copeland asks the court to preclude any evidence or testimony in support of the theory that he was not in compliance with hours-of-service requirements at the time of the collision. This request encompasses expert testimony.  Copeland fails to show that this broad category of evidence should be excluded.

33

The criticisms of this evidence go its weight, not its admissibility.  Copeland is free to raise specific objections to the admissibility of evidence pertaining to hours-of-service at trial, but the court will deny the motion.

### d. Motion to Preclude Evidence Suggesting that Defendant Copeland was Terminated from a Prior Employer for Refusing a Drug Test (ECF No. 233)

Plaintiffs state that they do not plan to submit evidence that Copeland was fired in the past for refusing a drug test to prove the truth of the matter asserted, but reserve the right to submit this evidence for the purpose of showing the J&TS "did not properly conduct a pre-hiring screen of" him.  (ECF No. 274, at 1.)  Plaintiffs will need to show how the evidence is relevant if not offered for its truth, as it appears that the portion of the CR supporting the claim that Copeland was fired for refusing a drug test is hearsay because it merely recounts what another person, who is not an opposing party, said.  For now, the court will deny the motion without prejudice.

### e. Motion to Preclude Admission of Graphic Photographs (ECF No. 234)

The court will take up objections to graphic photographs in the context of trial.  For now, the court will deny the motion without prejudice.

**f. Motion to Preclude Evidence Suggesting that Defendant Copeland's Commercial Driver's License Had Been Suspended or Revoked at the Time of the Subject Accident (ECF No. 235)**

In response to this motion, plaintiffs state that they will not introduce evidence or argument that Copeland did not have a valid commercial driver's license at the time of the collision. Therefore, the court will grant the motion.

**g. Motion to Preclude Evidence of Other Crimes, Wrongs or Acts (ECF No. 236)**

The court will grant the motion as to Copeland's criminal history. For the reasons stated above, the court will deny the motion as to Copeland's driving history.

**I. <u>Conclusion</u>**

For the reasons stated above, the court rules as follows on the motions in limine:

As to plaintiffs' motions, ECF Nos. 244 and 245 are **GRANTED**; ECF No. 247 is **GRANTED in part and DENIED in part**; and 246 is **DENIED as moot**.

As to Robinson's motions, ECF Nos. 237, 243, 239, and 242 are **GRANTED**; ECF Nos. 240 and 241 are **GRANTED in part and DENIED in part**; ECF No. 303 is **DENIED without prejudice**; and ECF No. 238 is **DENIED**.

As to Copeland's motions, ECF Nos. 231 and 235 are **GRANTED**; ECF Nos. 230 and 236 are **GRANTED in part and DENIED in part**; ECF

Nos. 233 and 234 are **DENIED without prejudice**; and ECF No. 232

is **DENIED**.

The Clerk is directed to send a copy of this Memorandum

Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 18th day of March, 2022.

ENTER:

David A. Faber
Senior United States District Judge